[S. F. No. 11554. In Bank.—December 2, 1925.]

ABNER DOBLE et al., Petitioners, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

[1] CRIMINAL LAW—CORPORATE SECURITIES ACT—CONSPIRACY TO VIOLATE—PENALTY.—A conspiracy to violate the Corporate Securities Act was not made punishable by the terms of the act itself until the amendment thereto of 1925 (Stats. 1925, p. 962), and the penalty for a conspiracy to violate said act before said amendment must be found in section 182 of the Penal Code.

[2] ID.—CONSTRUCTION OF SECTION 182, PENAL CODE—DEFINITION OF "ANY CRIME."—It was the legislative intent that the words "any crime" included in the first subdivision of section 182 of the Penal Code should include all crimes—whether felonies or misdemeanors—which are known to the law of this state and whether defined and made punishable by the Penal Code or by any other law or statute of the state.

[3] ID.—CONSPIRACIES TO COMMIT FELONIES—PUNISHMENT.—The first penal paragraph of section 182 of the Penal Code is meant to cover and punish only conspiracies to commit felonies punishable under the Penal Code and conspiracies to commit the acts prohibited under subdivision 5 of said section 182.

[4] ID.—OTHER OFFENSES—PUNISHMENT.—The mere circumstance that some of the offenses created by the first subdivision of section 182 of the Penal Code—namely, conspiracies to commit felonies defined by the Penal Code—are punishable under the first penal paragraph of the section does not· necessarily preclude a construction that the second penal paragraph may, among other things, prescribe the punishment for the remainder of the offenses created under subdivision 1 and not made punishable by the first penal paragraph.

[5] ID.—SECTION 182, PENAL CODE—SECOND PENAL PARAGRAPH—CONSTRUCTION.—The words "any of the other acts described in this section," contained in the second penal paragraph of section 182 of the Penal Code, are sufficiently broad to include within the purview of the paragraph *all* of the offenses created by the *five* subdivisions of the section and for which no penalty is imposed by, the first penal paragraph.

[6] ID. — CORPORATE SECURITIES ACT — AMENDMENT OF SECTION 14 OF 1925—CONSTRUCTION.—The amendment of 1925 to section 14 of

1. See 6 Cal. Jur. 779.

2. Definition and nature of conspiracy, notes, 3 Am. St. Rep. 474; 51 Am. Dec. 82. See, also, 5 Cal. Jur., 495, 503; 5 R. C. L. 1068.

the Corporate Securities Act (Stats. 1925, c. 447, p. 962), making a conspiracy to violate its provisions punishable, does not reflect an assumption upon the part of the legislature that previous to said amendment a violation of the provisions of said act could not be made the basis of a charge of conspiracy under section 182 of the Penal Code. It would be as reasonable to conclude that the legislature intended to eliminate any ambiguities or uncertainties as to the scope and meaning of section-182.

[7] Id.—Acts Constituting Felony or Misdemeanor—Construction of Section 17, Penal Code—Statute of Limitations.—In prosecutions under section 17 of the Penal Code, which provides that in a case where either felonious or misdemeanor punishment may be imposed "it shall be deemed a misdemeanor for all purposes after a judgment imposing other than imprisonment in the state prison," the charge stands as a felony for every purpose up to judgment, and if the judgment be felonious, in that event, it is a felony after as well as before judgment, but if the judgment is for a misdemeanor, it is deemed a misdemeanor for all purposes thereafter—the judgment not to have a retroactive effect so far as the statute of limitations is concerned.

---

(1) 16 C. J., p. 1361, n. 96 New. (2) 12 C. J., p. 644, n. 70 New. (3) 12 C. J., p. 644, n. 68. (4) 12 C. J., p. 644, n. 70 New. (5) 12 C. J., p. 644, n. 70 New. (6) 16 C. J., p. 1360, n. 79 New. (7) 16 C. J., p. 223 n. 55 New.

APPLICATION for Writ of Prohibition to prevent further proceedings under an indictment for violation of the Corporate Securities Act. Writ denied.

The facts are stated in the opinion of the court.

Devlin & Brookman, Haven, Athearn, Chandler & Farmer, Edwin V. McKenzie and W. A. Beasly, for Petitioners.

U. S. Webb, Attorney-General, Robert W. Harrison, Chief Deputy Attorney-General, William F. Cleary, Deputy Attorney-General, Matthew Brady, District Attorney, and Robert E. Fitzgerald, Deputy District Attorney, for Respondents.

LAWLOR, J.—Application for a writ of prohibition. In an indictment by the grand jury of the city and county of San Francisco bearing date September 2, 1924, petitioners are charged by the first count thereof with a conspiracy

under section 182 of the Penal Code based on alleged violation of the Corporate Securities Act (Stats. 1917, p. 673). In six other counts petitioners are charged with certain specific violations of the said Corporate Securities Act, the punishment for which is prescribed by section 14 thereof. Petitioners interposed a demurrer to the indictment and to each and every count thereof. The demurrer was disallowed. A motion to set aside and dismiss the indictment was interposed and denied. On October 27, 1924, petitioners pleaded ''not guilty'' to the charges contained in the indictment and every count thereof. The trial of the general issue was thereupon set for January 12, 1925, whereupon the present application for a writ of prohibition was made.

In support of the application it is urged that the Superior Court and Honorable Michael J. Roche, as Judge thereof, are without jurisdiction to try the petitioners upon or under the said indictment, or upon or under any count thereof. It is contended that the trial of said petitioners under the first count of the indictment would be without and in excess of the jurisdiction of the Superior Court for the reason that said first count fails to state a public offense, or any offense or crime known to the law of this state. As to the other counts of the indictment (2 to 7, inclusive) it is contended that the Superior Court and the said Judge thereof are without jurisdiction to try the petitioners for the reason that section 14 of the Corporate Securities Act makes a violation of its provisions punishable either as a felony or as a misdemeanor, and it appearing affirmatively upon the face of each of the said counts, 2 to 7, that the act complained of in each of said counts was committed more than a year in advance of the return of the indictment, it was not punishable because under section 801 of the Penal Code an indictment for a misdemeanor must be found or an information filed within one year after its commission. It is urged, therefore, that the Superior Court is without power to impose, in the event of conviction, misdemeanor punishment.

This proceeding involves two distinct questions of jurisdiction: First, Does section 182 comprehend a conspiracy to violate the provisions of the Corporate Securities Act? And second, Has the trial court jurisdiction to proceed to trial

on the six counts embracing alleged criminal acts potentially punishable as misdemeanors and which stand outlawed as such?

For convenience and clarity we will set forth the respective contentions as to the first count and discuss and dispose of the question there involved before taking up the problem connected with the remaining six counts of the indictment.

The discussion of the problem involved under the first count will necessarily revolve about sections 182 and 183 of the Penal Code in the light of sections 15, 16, and 17 thereof, and at this point we will quote the five sections at length.

"15. 'Crime' and 'public offense' defined. A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: 1. Death; 2. Imprisonment; 3. Fine; 4. Removal from office; or 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this state."

"16. Crimes, how divided. Crimes are divided into: 1. Felonies; and, 2. Misdemeanors."

"17. Felony and misdemeanor defined. A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime is a misdemeanor. When a crime, punishable by imprisonment in a state prison, is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison."

"182. Criminal conspiracy defined and punishment fixed. If two or more persons conspire:

"1. To commit any crime;

"2. Falsely and maliciously to indict another for any crime, or to procure another to be charged or arrested for any crime;

"3. Falsely to move or maintain any suit, action or proceeding;

"4. To cheat and defraud any person of any property, by any means which are in themselves criminal, or to obtain money or property by false pretenses or by false promises with fraudulent intent not to perform such promises;

"5. To commit any act injurious to the public health, to public morals, or to pervert or obstruct justice, or the due administration of the laws.

"They are punishable as follows:

"When they conspire to commit any felony, or to commit any act injurious to the public health, or to public morals, or tending to pervert or obstruct justice, or the due administration of the laws, they shall be punishable in the same manner and to the same extent as in this code provided for the punishment of the commission of the said felony or act, respectively.

"When they conspire to do any of the other acts described in this section they shall be punishable by imprisonment in the county jail or state penitentiary not exceeding two years, or by a fine not exceeding five thousand dollars, or both, and cases of such conspiracy may be prosecuted and tried in the superior court of any county in which any overt act tending to effect such conspiracy shall be done."

"183. No other conspiracies punishable criminally. No conspiracies, other than those enumerated in the preceding section, are punishable criminally."

### Count 1.

As to this count the petitioners contend: "The Corporate Securities Act contains nothing making it a crime to conspire to violate its provisions.

"Section 182 of the Penal Code is the only law which, in general terms, prohibits conspiracies to commit certain crimes. . . .

"It will be noted that Section 182 has two penal paragraphs. For brevity, we shall refer to the first penal paragraph beginning, 'When they conspire to commit any felony,' as 'Pen. Par. No. 1,' and to the second penal paragraph beginning, 'When they conspire to do any of the other acts,' as 'Pen. Par. No. 2.' . . .

"It will be noted that Pen. Par. No. 1 is limited to providing punishment for conspiracies to commit felonies and the acts enumerated in subd. 5. It will be further noted that Pen. Par. No. 1 provides a punishment for conspiracies to commit such felonies only as are enumerated in the Penal Code. . . .

"It will be conceded that a violation of the Corporate Securities Act is a crime. We also believe . . . that subds. 2, 3, 4 and 5 of section 182 do not prohibit, and do not deal with, conspiracies of the character charged in Count No. 1. It therefore follows that if the crime of conspiracy charged is to be found in Section 182 at all, it must be embraced within subd. 1 of Section 182, 'To commit any crime.'

"It also follows that no punishment for the crime of conspiracy charged in Count No. 1 is to be found in Pen. Par. No. 1, for the reason that Pen. Par. No. 1 is limited to the punishment of conspiracies to commit such felonies only as are enumerated in the Penal Code ('this code') and a violation of the Corporate Securities Act is not one of the crimes enumerated or found in the Penal Code. The Corporate Securities Act is not a part of the Penal Code. [*In re Isch,* 174 Cal. 180 [162 Pac. 1026], is then cited in support of the contention that the words "this code" found in "Pen. Par. No. 1" mean and refer to the "Penal Code" exclusively.]

"Pen. Par. 1 covers all felonies, conspiracies to commit which are punishable criminally. . . .

"Subd. 1 of Section 182 reads: 'To commit any crime.' It, therefore, includes conspiracies to commit all felonies which are not included in the other subdivisions of Section 182. The phrase, 'any felony,' used in Pen. Par. No. 1, is coextensive with and equally as broad as the phrase 'any crime,' as far as the phrase 'any crime' relates to felonies. Subd. 1, 'to commit any crime,' may be resolved into its component parts without changing its meaning and be written thus, 'to commit any felony or any misdemeanor,' because crimes are composed of both felonies and misdemeanors. (Pen. Code, Sec. 16.) This throws into relief and emphasizes the fact that the phrase 'any felony' of Pen. Par. No. 1 is as 'all-inclusive' and as broad as the phrase 'any felony' which is a component part of the phrase 'any crime' used in subd. 1. Hence, the phrase 'any crime' used in Pen. Par. No. 1 includes *every felony,* a conspiracy to commit which is punishable criminally.

"It, therefore, follows that if Count No. 1 charges a conspiracy to commit a felony, the punishment therefor cannot be found in Pen. Par. No. 1. . . .

197 Cal.—36

"There remain two further propositions to examine:

" (1) Is the crime charged in Count No. 1 a conspiracy to commit a crime falling within the provisions of subd. 1 of Section 182, and if so,

" (2) Is the punishment therefor to be found in Pen. Par. No. 2?

"Let us now examine Pen. Par. No. 2 to ascertain if it does provide a punishment for conspiracies to commit misdemeanors included within the generic term 'crime' found in subd. 1 of Section 182. . . .

" (1) The conspiracies to commit felonies which are punishable criminally are strictly limited. Only conspiracies to commit such felonies as are specifically enumerated in Section 182, directly or by reference to felonies a punishment for which is to be found in the Penal Code are punishable criminally, thereby giving force and effect to Section 183 of the Penal Code which declares that only the conspiracies *enumerated* in Section 182 shall be punishable criminally.

" (2) If, however, the phrase 'any crime' in subd. 1 of Section 182 is construed to embrace conspiracies to commit misdemeanors other than those specifically described in subds. 2, 3, 4 and 5 of Section 182, then it must follow that a conspiracy to commit *any misdemeanor* is punishable criminally, and that the word 'described' used in Pen. Par. No. 2 is without restrictive meaning, the word 'enumerated' used in Section 183 is likewise meaningless, and Section 183 is without force or effect as regards conspiracies to commit misdemeanors. . . .

"What is the meaning of the phrase 'any of the other acts described in this section [found in Penal Par. No. 2]? Let us first determine what other acts are described in Section 182 to which the phrase just quoted does *not apply.* The phrase does not apply to felonies or misdemeanors described directly or by reference to the Penal Code within the generic term 'crime' found in subd. 1 of Section 182. These, as has been seen, are covered by Pen. Par. No. 1. Nor does it apply to felonies or misdemeanors described in subd. 5 of Section 182. These too are covered by Pen. Par. No. 1.

" 'Other acts' which are not covered by Pen. Par. No. 1 are found described in subds. 2, 3 and 4 of Section 182,

These acts described in subds. 2, 3 and 4 are manifestly covered by Pen. Par. No. 2. . . .

"In conclusion, Count No. 1 having failed to charge a crime under Section 182 of the Penal Code, it perforce follows that the Superior Court has no jurisdiction to put these petitioners to their defense thereunder."

In reply the attorney-general contends that "The issue under the first count is whether or not it is a crime for two or more persons to conspire to violate the provisions of the Corporate Securities Act. It is admitted by all parties that such act does not itself prohibit such a conspiracy, but it is contended by the state that section 182 of the Penal Code is broad enough in its terms to do so. This contention is opposed by the petitioners, and so the primary question is:

"Does section 182 of the Penal Code define, prohibit and make punishable a conspiracy to violate the provisions of the Corporate Securities Act?

"In answering the foregoing question in the affirmative, we call particular attention to subdivision 1 of Section 182 of the Penal Code, which provides that if two or more persons conspire 'to commit any crime' they are guilty of a criminal conspiracy. We also call attention to the fact that under section 15 of the Penal Code a violation of the Corporate Securities Act is a crime.

"It is our contention that the phrase 'any crime' means and includes every felony and every misdemeanor prescribed by the laws of this state. Our opponents, on the other hand, contend that the term 'any crime' means 'any felony made punishable by the Penal Code'; we therefore have a secondary question, namely:

"What is meant by the term 'any crime' as used in subdivision 1 of section 182 of the Penal Code?

"In support of our contention that the term 'any crime' means and includes every felony and every misdemeanor, we cite sections 15 and 16 of the Penal Code, the first one of which defines the word 'crime,' and the second one of which divides crimes into felonies and misdemeanors. From these sections we see that as a matter of positive law the term 'any crime' includes every felony and every misdemeanor. . . .

"We turn now to the penal provisions of section 182 of the Penal Code to see which (if either) of the two provide

the punishment for conspiracy to violate the provisions of the Corporate Securities Act. The pertinent part of the first penal paragraph reads as follows:

" 'When they conspire to commit any felony . . . they shall be punishable in the same manner and to the same extent as in this code provided for the punishment of the commission of the said felony. . . . '

"The question of whether or not a conspiracy to violate the provisions of the Corporate Securities Act is made punishable by the foregoing provisions of section 182 of the Penal Code depends upon what construction is placed upon the term 'this code' as used in that provision. It would seem, upon first thought, that the term 'this code' means the Penal Code as distinct from the other three codes and the general laws. The dicta of *In re Isch* follows this view. However, section 4480 of the Political Code provides that: 'With relation to each other, the provisions of the four codes must be construed . . . as though all such codes had been passed at the same moment of time and were parts of the same statute.'

"Thus, section 4480 of the Political Code would seem to imply that the term 'this code' includes at least the four codes.

"We are inclined to the view that the legislature used the term 'in this code provided' as meaning 'as by the law of this state provided.' We reach such conclusion because we are unable to see any reason for distinguishing between conspiracies to commit felonies made punishable by the Penal Code and conspiracies to commit felonies made punishable by any other law of this state."

It is then contended that if a conspiracy to violate the provisions of the Corporate Securities Act is not made punishable by the first penal paragraph of section 182, then it is punishable by the second penal paragraph thereof, as "It is a general provision which penalizes all criminal conspiracies prohibited by the five subdivisions of the section, but which were not made punishable by the first penal paragraph."

[1] The parties are correct in their respective statements that a conspiracy to violate the Corporate Securities

Act was not, until very recently and subsequent to the commission of the offense here charged, made punishable by the terms of the act itself, and therefore the offense here charged if punishable at all the penalty must be found in section 182 of the Penal Code. Before an interpretation may be attempted of either of the penal paragraphs of section 182 it becomes necessary to determine the scope and meaning of the words "any crime" found in the first subdivision of that section. [2] We are of the opinion it was the legislative intention that the words "any crime" should include all crimes—whether felonies or misdemeanors—which are known to the law of this state and whether defined and made punishable by the Penal Code or by any other law or statute of the state. That is to say, neither by the term itself nor by implication does the word "crime" import alone offenses defined and made punishable by the Penal Code, as contended by petitioners, but, as indicated, is sufficiently comprehensive to include all felonies and misdemeanors known to the law of this state. This construction of subdivision 1 would seem to be the only logical one in view of the express terms of sections 15, 16, and 17 of the Penal Code. It is obvious from even the most casual reading of section 15 that the legislature by its definition of "crime" intended all acts or omissions in contravention of *any* law of the state, whether included in the Penal Code or not, and to which would attach the prescribed penalties. It must therefore be held, especially in view of the interpretation of the term "crime" in section 16, that the legislature employed the word in that sense in the first subdivision of section 182. By no rule of interpretation can the word be held to be limited to offenses provided for in the Penal Code.

Nor do we think there is anything in the remainder of section 182 opposed to the construction we have placed upon the word "crime" found in subdivision 1 thereof. Subdivisions 2, 3, 4, and 5 of the section merely prescribe specific acts a conspiracy, to commit any one of which is denounced as an offense. We may next consider whether there is anything in the two penal paragraphs of the section calling for a different construction. The first penal paragraph

punishes a conspiracy "to commit *any felony,* or to commit *any act* injurious to the public health, or to public morals, or tending to pervert or obstruct justice, or the due administration of the laws . . . to the same extent *as in this code provided* for the punishment of the commission of the said felony or act, respectively." In other words, it is evident that this first penal paragraph fixes the penalty upon persons found guilty of conspiring to commit any of the acts enumerated in subdivision 5 of this section or conspiring to commit any felony comprehended by subdivision 1, defined and made punishable by the Penal Code—the punishment for the conspiracy in each instance being the same as that prescribed by the Penal Code where an individual is guilty of the offense which is the object of the conspiracy. [3] It may be said, then, that the first penal paragraph is meant to cover and punish *only conspiracies to commit felonies punishable under the Penal Code* and conspiracies to commit the acts prohibited under subdivision 5 of section 182. [4] The mere circumstance that some of the offenses created by the first subdivision of section 182—namely, conspiracies to commit felonies defined by the Penal Code— are punishable under the first penal paragraph of the section does not necessarily preclude a construction that the second penal paragraph may, among other things, prescribe the punishment for the remainder of the offenses created under subdivision 1 and not made punishable by the first penal paragraph. It therefore becomes necessary to determine the scope of the second penal paragraph.

[5] This latter penal paragraph commences "When they conspire to do *any of the other acts* described in this section. . . . " The quoted words are sufficiently broad to include within the purview of the paragraph *all* of the offenses created by the *five* subdivisions of the section and for which no penalty is imposed by the first penal paragraph. That is to say, the words "any of the other acts described in this section" were meant to, and do in fact, include all other conspiracies to commit crimes or acts prohibited by the section regardless of whether they are denounced by subdivision 1 or any other subdivision thereof. Therefore, in this second penal paragraph we find the penalty that is to

be imposed upon those conspiring to commit any of the crimes or acts denounced by subdivisions 2, 3 and 4 and that which is to be imposed for a conspiracy to commit any and all misdemeanors, whether defined by the Penal Code or by any other statute, and for conspiracies to commit all felonies which are defined and penalized by some law *other than the Penal Code.* In other words, the second penal paragraph in addition to prescribing the punishment for conspiracies to commit the crimes or acts specified in subdivisions 2, 3, and 4 of the section, also prescribes the punishment for all offenses denounced by subdivision 1 and for which the first penal paragraph does not prescribe a punishment—namely, conspiracies to commit any and all misdemeanors, not included in those enumerated in subdivision 5, and conspiracies to commit all felonies prescribed by some general law of the state other than the Penal Code.

The construction contended for by petitioners—that the words "any of the other acts described in this section" were intended to include *only* conspiracies to commit the crimes or acts enumerated and denounced by subdivisions 2, 3, and 4 of the section—is a strained construction not reasonably justified by the language employed. The second penal paragraph does not, in so many words, attempt to confine itself exclusively to the crimes or acts set forth in subdivisions 2, 3, and 4, and to so hold would, in our opinion, give an erroneous and limited meaning to the language found in the paragraph. Nor do we find any merit in the contention that by section 183 there are no conspiracies punishable criminally other than those "enumerated" in the preceding section (182) for the words "any crime," appearing in subdivision 1 of section 182, having been shown to include felonies and misdemeanors punishable under the law of the state, a conspiracy to violate the Corporate Securities Act being a crime, would be "enumerated" within the meaning of the terms of section 183.

Our construction of section 182 may be illustrated by placing the several classifications of conspiracies in juxtaposition with the punishment prescribed therefor, thus:

*If two or more persons conspire:*
  (Subd. 1.)
to commit "any crime":
1. felonies
  (a) defined by the (
    Penal Code (punishable by Penal Paragraph 1.* )
  (b) defined by
    other laws ( "  "  "   "  2.**)
2. Misdemeanors
  (a) defined by the (
    Penal Code ( "  "  "   "  2.**)
  (b) defined by (
    other laws ( "  "  "   "  2.**)
    (Subd. 2.)
to falsely and ma- (
liciously charge or ( "  "  "   "  2.**)
indict another for (
any crime    (
    (Subd. 3.)
to falsely m o v e or (
maintain any suit, ( "  "  "   "  2.**)
action or proceeding (
    (Subd. 4.)
to cheat and defraud (
another of property (
by criminal means (
or to obtain money ( "  "  "   "  2.**)
or property by false (
pretenses or prom- (
ises    (
    (Subd. 5.)
to commit any act in- (
jurious to p u b l i c (
health, public mor- (
als, to pervert or ( "  "  "   "  1.* )
obstruct the due ad- (
ministration of the (
laws    (
They are punishable as follows:
*(Penal Paragraph 1.) "When they conspire to commit any felony, or to commit any act injurious to the public health, or to public morals, or tending to pervert or obstruct justice, or the due administration of the laws, they shall be

punishable in the same manner and to the same extent as in this code provided for the punishment of the commission of the said felony or act, respectively."

**(Penal Paragraph 2.) "When they conspire to do any of the other acts described in this section they shall be punishable by imprisonment in the county jail or state penitentiary not exceeding two years, or by a fine not exceeding five thousand dollars, or both. . . . "

Petitioners seek to fortify their foregoing contentions as to the scope and meaning of section 182 by the historical background of that section and state that "There can be no gainsaying the proposition that, at the time the Penal Code was adopted, Subdivision 1 of Section 182 referred only to crimes enumerated in the Penal Code, because the only acts or omissions that were criminal or punishable then were those prescribed by the Penal Code.

"Section 6 of the Penal Code, which was also adopted in 1872, makes this quite evident. It reads: 'No act or omission commenced after twelve o'clock noon of the day on which this code takes effect as a law, is criminal or punishable, except as prescribed or authorized by this code, or some of the statutes, which it specifies as continuing in force and as not affected by its provisions. . . . ' The statutes that were specified as being continued in force are enumerated in Section 23 of the Penal Code.

"The legislature in 1872, as it were, wiped the slate clean and set out in the Penal Code all acts or omissions that should be criminal or punishable. It perforce follows, therefore, that the only crimes that Subdivision 1 of Section 182 could have referred to, at the time of its enactment, were the crimes specifically enumerated and described in the Penal Code. [Petitioners are in error as to this statement. Among the statutes continued in force by section 23 of the Penal Code are several which create crimes of the grade of misdemeanors and prescribe the penalties therefor. See, for example: Subd. 8 (Stats. 1867–68, p. 604; subd. 9 Stats. 1865–66, p. 641); subd. 11 (Stats. 1865–66, p. 332); and subd. 12 (Stats. 1865–66, p. 637). It is not true, therefore, that "the only crimes that Subdivision 1 of Section 182 could have referred to, at the time of its enactment, were the crimes specifically enumerated and described in the Penal Code."] It also follows that since Section 183 limited the

conspiracies that were punishable criminally to those enumerated in Section 182, and since Section 182 was in turn limited, in its reference to crimes, to crimes enumerated in the Penal Code, Section 183 limited the conspiracies to commit crimes to those crimes which are specifically enumerated in the Penal Code.

"It is conclusively evident, therefore, that, at the time the Penal Code was adopted, the crimes, a conspiracy to commit which were punishable criminally, were strictly limited to those crimes enumerated in the Penal Code because there were no other crimes and that such limitation was necessarily the intent of the legislature.

"The legislature might have enlarged the scope of Section 182 and of Subdivision 1 thereof, but it has not done so. Subdivision 1 has never been amended, nor has section 183."

We quote from respondents' brief: "But even aside from the question of grammatical construction . . . the history of section 182 of the Penal Code belies the contention that the term 'any crime' means 'any felony made punishable by the Penal Code.'

"In 1850, the first legislature passed 'An Act Concerning Crimes and Punishments' (Stats. 1850, page 229). Section 102 of that Act (p. 242) is the forerunner of section 182 of the Penal Code. It provided in part: 'If two or more persons shall conspire . . . to commit any offense . . . they shall, on conviction, be punished by imprisonment in the county jail not more than one year or by a fine not exceeding $1000.'

"It should be noted that the legislature used the generic term 'any offense.' Unfortunately, we have been unable to find any case construing that term; but one thing is sure: It was not limited in meaning to 'felonies made punishable by the Penal Code' for the very good reason that at that time there was no Penal Code. Nor can it be said that the term 'any offense' applied only to those offenses proscribed by the 'Act Concerning Crimes and Punishments' for the simple reason that that act was not self-sufficient, but depended upon other acts for its efficacy, and therefore of necessity, would have had to have been construed as being a part and parcel of the general laws of the state. . . .

"In 1872, when the four codes were first adopted, section 102 of the Act Concerning Crimes and Punishments was

changed into section 182 of the Penal Code. In the transposition the term 'to commit any offense' was changed to 'to commit any crime,' the word 'offense' and the word 'crime' having the same legal significance. (Statutes 1850, p. 275, Sec. 2, and Penal Code, sec. 15.)

"From 1872 down to the present time, subdivision one of section 182 of the Penal Code has read 'to commit any crime.' In 1872, and until the 1919 amendment to the section, the penal provision was: 'they are punishable by imprisonment in the county jail not exceeding one year or by a fine not exceeding $1000, or both.' In other words, prior to the 1919 amendment, all criminal conspiracies were made punishable in the same manner and to the same extent. Bearing this fact in mind, let us construe the meaning which attached to the words 'any crime' prior to the 1919 amendment. The section read in part as follows: 'If two or more persons conspire; . . . to commit any crime . . . they are punishable by imprisonment in the county jail not exceeding one year or by a fine not exceeding $1000, or both.'

"What was then the meaning of the term 'any crime'? Was it limited in its meaning to felonies to the exclusion of misdemeanors? Did it mean only such felonies or felonies and misdemeanors as were made punishable by the Penal Code? Manifestly not. It meant any and every crime, whether felony or misdemeanor, whether made punishable by the Penal Code, the Civil Code, the Code of Civil Procedure, the Political Code or the General laws. (See sections 15, 16 and 17 of the Penal Code.)

"Such was the meaning of the term 'any crime' prior to the 1919 amendment. It still has that meaning—the same conspiracies which were prohibited prior to the amendment are prohibited today; it is only the penalties which have been changed. As our opponents admit, indeed as they argue, the penalty imposed is a separate and distinct element of a crime from that of its prohibition. The legislature amended the penal provisions or one element of the crime, but did not amend the prohibitory provision, a separate and distinct element of the crime. Therefore, the same conspiracies which were prohibited prior to the 1919 amendment are prohibited today, and it is manifest that the term 'any crime' means any and every crime, whether felony or mis-

demeanor, and whether made punishable by the Penal Code or by any other law of the State."

It is plain to us that instead of the historical aspect of the question supporting or fortifying petitioners' contentions, the reply of respondents seems to refute them, for, as pointed out in the reply, the language—"as in this code provided"—was not made a part of the penal provisions of section 182 until the year 1919. (Stats. 1919, p. 170.) In view of this there can be no question that if the identical point here involved had been raised prior to said amendment petitioner's argument would have been rejected.

[6] The petitioners in support of the claim that conspiracies to violate the Corporate Securities Act did not, when the alleged violations thereof were committed, come within the purview of section 182, refer to the amendment in 1925 of section 14 of said act (Stats. 1925, c. 447, p. 962) making a conspiracy to violate its provisions punishable, as, in effect, indicating legislative construction that section 182 never had been intended to apply to conspiracies to commit crimes not provided for in the Penal Code. We do not think it can be said that the amendment of section 14 in 1925 reflects an assumption upon the part of the legislature that previous to said amendment a violation of the provisions of the Corporate Securities Act could not be made the basis of a charge of conspiracy under section 182 of the Penal Code. It seems to us it would be as reasonable to conclude that the legislature intended to eliminate any ambiguities or uncertainties as to the scope and meaning of section 182.

Having decided that a conspiracy to violate the Corporate Securities Act is punishable under the second penal paragraph of section 182, which provides for the infliction of either a felonious or a misdemeanor penalty, in the discretion of the trial court, a conclusion which, it is fair to say, if anticipated by the petitioners, would doubtless have been met with the claim made by them under counts 2 to 7 as to the statute of limitations, therefore what we shall say under the next head may be deemed to apply equally to count 1 of the indictment.

### Counts 2 to 7.

As to counts 2 to 7, inclusive, it is contended by the petitioners that "the crime of violating the provisions of the Corporate Securities Act is punishable either as a misde-

meanor or as a felony, in the discretion of the court. (Sec. 14, Corporate Securities Act.)

"The prosecution of a misdemeanor is barred if the indictment therefor is not returned within one year after its commission. (Sec. 801, Pen. Code.)

"The indictment in the case at bar was returned more than one year after the commission of the offense alleged in each count. . . .

"It is apparent from the foregoing considerations that as to Counts 2 to 7, inclusive, there is just one question for determination and that is: Where a crime is punishable either as a misdemeanor or as a felony, in the discretion of the court, what is the effect of the statute of limitations on the jurisdiction of the trial court where the indictment for the crime is returned more than one year after its commission?

"This proposition will be conceded by all: The purpose of making a crime punishable either as a misdemeanor or as a felony, is not to give to a judge unbridled or arbitrary discretion, but to give to him the opportunity to mete out such punishment as, in his opinion, will be commensurate with the gravity of the offense, coupled with a consideration of the age and character of the accused. . . .

"Now, in the instant case, is the court free to exercise that merciful judicial discretion which has been bestowed upon it by the legislature in the furtherance of justice and sound public policy? The answer must be No! And, why? Because:

"1. Upon the trial and conviction of the accused the trial court must render some judgment and mete out some punishment within the limits prescribed by law, and the court, in the case at bar, cannot impose a misdemeanor punishment.

"2. A court, in order to have complete jurisdiction, must have the power to carry its judgment into effect, and, unless it has such power, it has not jurisdiction at all, and any judgment it may render is a nullity and void.

"3. If a court is deprived of its power to exercise the full discretion granted to it by the legislature in the rendition of its judgment and the imposition of punishment, then the accused affected by such judgment and punishment is denied the equal protection of the laws guaranteed to him by the Federal and State Constitutions. . . .

"The court cannot determine and impose a punishment within the limits prescribed by law, because those limits by a failure to return the indictment within one year have been abolished.

"The court has no jurisdiction to render a judgment as for a misdemeanor, because such a judgment would be a nullity, unenforceable and void."

It is then contended that "under such circumstances the court is without jurisdiction to render a judgment of sentence as for a felony. Unless this latter proposition is true, an accused would be denied the equal protection of the laws. . . . "

On the other hand, the attorney-general contends, as to these several counts that, "under section 17 of the Penal Code, an offense which may be punished either as a misdemeanor or as a felony in the discretion of the trial court, is a felony—at least for all purposes prior to the imposition of a punishment of misdemeanor grade. . . .

"If we are correct in our contention as to the meaning of the word 'deemed,' then it follows that a crime which is punishable by imprisonment either in the state prison or by fine or imprisonment in the county jail in the discretion of the court, is, and forever remains, a felony, but that if the punishment imposed is other than imprisonment in the state prison, although the nature of the crime is not changed, yet for all purposes *thereafter* arising it is regarded as being a misdemeanor.

"Under such a construction of section 17 of the Penal Code it would follow that the only statute of limitation which would be applicable to an offense made punishable either by imprisonment in the state prison or by fine or imprisonment in the county jail, in the discretion of the court, would be the statute of limitation applicable to felonies. . . . "

Concisely stated, the contention of petitioners is this: Since it affirmatively appears on the face of the indictment that each of the acts complained of was committed more than one year prior to the filing thereof the misdemeanor phrase of each charge, by virtue of the statute of limitations (sec. 801, Pen. Code), stands eliminated from the case; that it would therefore be futile to proceed with the trial, for if the court should decide that misdemeanor punishment was called for the judgment would be void as resting on a barred

charge; and that if a felonious punishment should be deemed appropriate it could not legally be imposed for with the misdemeanor element eliminated there would be no basis for the exercise of the statutory discretion.

It is argued that the misdemeanor element is eliminated because of the provisions of sections 17 and 801 of the Penal Code. Section 17 does provide that in a case where either felonious or misdemeanor punishment may be imposed "it shall be *deemed* a misdemeanor for all purposes after a judgment imposing other than imprisonment in the state prison." It is urged that when a misdemeanor judgment has been imposed the offense is a misdemeanor for all purposes, both before and after judgment. *People* v. *Gray,* 137 Cal. 267 [70 Pac. 20], upon which petitioners rely, involved a misdemeanor judgment based on a charge of seduction for which the accused was liable to be punished either by imprisonment in the state prison, or by fine, or by both such fine and imprisonment. It appearing that more than a year had elapsed between the commission of the crime and the institution of the charge the court held that the judgment had the effect of making the crime a misdemeanor *ab initio.* The court declared that the point was definitely decided in *People* v. *Picetti,* 124 Cal. 361 [57 Pac. 156]. Concerning *People* v. *Gray, supra,* the attorney-general contends that "The cases of *People* v. *Salorse,* 62 Cal. 139, and *People* v. *Picetti* in nowise support the decision in the Gray case, for the reason that in neither case was the offense punishable by imprisonment in the state prison or by fine or imprisonment in the county jail *in the discretion of the court.* That is to say, in the Picetti case the offense was either grand or petit larceny depending upon the value of the goods stolen . . . " In *People* v. *Gray, supra,* differing from the case at bar, the trial had been had and judgment pronounced. It is apparent that none of the cases cited is authority on the question presented here, namely, Is prohibition available to prevent the court below from proceeding with the trial of the general issue where there has been no trial and no judgment and only the misdemeanor phase of the alleged offense is asserted to be barred?

But even if it be assumed that *People* v. *Gray, supra,* is applicable to the situation here, we have reached the conclusion that it should be overruled. In the first place the decision is inaccurate in the statement that "the question

has been definitely decided by this court . . . in the case of *People* v. *Picetti,* 124 Cal. 361 [57 Pac. 156]." It will be seen by the latter case that section 801 alone was applicable and that section 17 was in no way involved. In *People* v. *Picetti, supra,* the appellant was charged with grand larceny and found guilty of petit larceny. It was clear from the *evidence* that appellant stole less than $50 and hence he never should have been charged with grand larceny. In other words, it was a misdemeanor *ab initio* and section 801 was therefore properly applied. The case is, therefore, only authority for the proposition that where a defendant is charged with a felony but has only committed a misdemeanor the statute of limitations for misdemeanors and not that for felonies will govern. However, that case is not authority under the provision of section 17 here involved, for that provision only has application to the judgment where the punishment may be either for a felony or a misdemeanor. It will be noted that in quoting section 17 the opinion in *People* v. *Gray, supra,* ignores the language—"after a judgment imposing a punishment other than imprisonment in the state prison"—following the phrase "shall be deemed a misdemeanor for all purposes."

It is true that *People* v. *Gray, supra,* has not been challenged during the intervening twenty-three years, but it is also the fact that no other case had held that where a misdemeanor punishment is imposed within the purview of section 17 the judgment has a retroactive effect so as to characterize the offense as a misdemeanor from the time of its commission. But apart from these considerations, we think the doctrine laid down in *People* v. *Gray, supra,* is perversive of the true intent and meaning of section 17. That case does not apparently question the proposition that in cases where discretion is vested in the trial court to impose either a felony or a misdemeanor punishment the charge may be prosecuted as a felony, and that if such form of judgment is rendered it stands throughout as a felony without any of the characteristics of a misdemeanor. This being so, it would follow that in every such case where a misdemeanor punishment is imposed the state had done a vain thing in prosecuting the charge as a felony, notwithstanding the evidence might amply justify a belief that a felonious judgment would be responsive. [7] A fair construction of section 17, in order to give effect to every part thereof, requires us to hold, and we do so hold, that in prosecutions within the con-

templation of that section, the charge stands as a felony for every purpose up to judgment, and if the judgment be felonious in that event it is a felony after as well as before judgment; but if the judgment is for a misdemeanor it is deemed a misdemeanor for all purposes thereafter—the judgment not to have a retroactive effect so far as the statute of limitations is concerned.

It is hereby ordered that the application for a writ of prohibition be and the same is hereby denied as to all the counts of the indictment.

Myers, C. J., Richards, J., Shenk, J., Seawell, J., Waste, J., and Lennon, J., concurred.

Rehearing denied.